```
                  UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF ALABAMA
                      NORTHEASTERN DIVISION
```

FILED
01 JUL -9 AM 11:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

SHELIA WASHINGTON,             )
                               )
     Plaintiff,                )
                               )
vs.                            )     Civil Action No: CV-00-S-617-NE
                               )
CITY OF SCOTTSBORO, ALABAMA,   )
RICK NANCE, and MAYOR          )
LOUIS PRICE, in his individual )
capacity,                      )
                               )
     Defendants.               )

ENTERED
JUL 9 2001

## MEMORANDUM OPINION

This action is before the court on plaintiff's motion to set aside a settlement agreement. (Doc. no. 37.) Plaintiff admits signing the agreement, but asserts that her attorney "used misleading words and tactics in coercing my signature on the settlement." (*Id.*) Defendant responded with a motion to enforce the agreement (doc. no. 39), and plaintiff's counsel responded with a motion to withdraw (doc. no. 42). This court conducted an evidentiary hearing on June 21, 2001. Upon consideration of the motions, evidence submitted by the parties, and oral arguments of counsel, the court finds plaintiff's motion is due to be denied, and defendant's motion is due to be granted. Further, the motion of plaintiff's counsel to withdraw is due to be granted.

43

## I. FACTS

Plaintiff commenced this action on March 9, 2000, asserting claims of race discrimination, racially hostile work environment, and retaliation in violation of 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. She was represented by Marvin Stewart of the "Stewart Law Group, P.C." Mr. Stewart was assisted by an associate, Taffiny Stewart.

The terms of the legal representation of plaintiff by the Stewart Law Group are delineated in a "Contingent Fee Contract" executed by plaintiff. The contract provides that the Stewart Law Group will receive "forty (40%) percent of all amounts recovered as a result of a judgment, settlement or otherwise, plus any out-of-pocket expenses incurred by the Firm."[1] The contract further authorizes the firm to settle the action on plaintiff's behalf:

> The parties agree that the Firm has the authority to settle this matter in the amount deemed appropriate by the Firm in view of the Firm's agreement to pursue this matter on a contingency basis and make the appropriate financial investment to do so.
>
> A settlement of any type or nature shall be communicated by the Firm to the client; in addition, all offers of settlement received by the Firm shall be promptly communicated to Sheila Washington.[2]

Following depositions taken during February of 2001, Taffiny

---

[1] Counsel's Ex. 1, ¶ 2.

[2] Id. ¶ 4.

2

Stewart became concerned about the ability of plaintiff to prevail.[3] Thus, she was receptive when counsel for defendants offered to initiate settlement negotiations. Defendants' initial settlement proposal consisted of an offer of money damages. Taffiny Stewart determined, however, that plaintiff would recover more if she were temporarily reinstated to her position, and allowed to collect retirement benefits. Taffiny Stewart and plaintiff discussed defendants' settlement proposal and Ms. Stewart's proposed counter-offer during a meeting at the law firm on Wednesday, April 11, 2001. Plaintiff did not object to Stewart's plan to secure retirement benefits in lieu of a lump sum in money damages. Counsel for defendants notified Taffiny Stewart on April 19, 2001, that defendants had agreed to temporarily reinstate plaintiff, and allow her to collect retirement benefits (the benefits allegedly would provide plaintiff $1,000 each month for twenty years, or $240,000 over time). That afternoon, Taffiny Stewart mailed a letter to counsel for defendants confirming the

---

[3] Plaintiff's case allegedly hinged upon the use of a racial epithet by the father-in-law of plaintiff's supervisor. If that is so, then plaintiff's position was undermined by the deposition testimony of a co-worker, who testified to hearing plaintiff use the same racial epithet on multiple occasions. (Deposition of Yvonne Yockel at 48.) Further, plaintiff admitted to spray painting the letters "KKK" on her ex-husband's car. (Deposition of Shelia Washington at 50-52.)

agreement,[4] and a copy also was mailed to plaintiff.[5] Taffiny Stewart first became aware of plaintiff's objections to the agreement during a telephone call received between April 19th and 27th. Plaintiff expressed concern over the fact that she would not receive money damages, but told Taffiny Stewart to do whatever she (Stewart) thought was best.

On April 27, 2001, plaintiff met with Marvin Stewart at his office. She arrived thirty minutes late. While waiting to see Marvin Stewart, plaintiff reviewed the written settlement agreement, which had been given to her by a staffperson of the firm. Plaintiff claims Marvin Stewart appeared in a hurry. She claims that she asked whether she could take the agreement home, and read it over the weekend. Mr. Stewart allegedly refused. Plaintiff expressed concern that she would be unable to collect her retirement benefits, because she had withdrawn the $15,000 in principal that she had paid into the fund following termination of her employment. She asked whether she would be required to repay the $15,000 before becoming entitled to receive retirement benefits in the future. Stewart told her that he had never encountered a situation in which a plaintiff had been required to repay withdrawn

---

[4] Response to show cause order filed by plaintiff's counsel on June 1, 2001 (doc. no. 40), Tab 3.

[5] Id. at 2 ("cc" to plaintiff).

4

funds before receiving benefits. He promised, however, that the firm would loan her $15,000 to be repaid at $100 per month if that was required. Plaintiff expressed her opinion that defendants should be required to repay the $15,000 she had withdrawn, and an additional $2,000 in unemployment benefits that she was required to repay. Plaintiff claims that Marvin Stewart then told her that if she did not sign the agreement as written, the secretary of this court would sign her name for her. Plaintiff then signed the agreement.

The agreement provided that the Stewart Law Group, P.C., was to be paid $37,000 in costs and attorney's fees by defendant within seven business days after the agreement was signed by plaintiff. (That money was paid.) The agreement further provided that plaintiff would immediately dismiss the action with prejudice, and contains a general release of all claims against defendants. (The agreement does, however, preserve plaintiff's right to assert a claim for worker's compensation benefits.) The agreement further includes an acknowledgment by plaintiff that she was advised by an attorney, was represented by competent counsel, had carefully read and understood the agreement, and had executed it voluntarily. According to the terms of the agreement, plaintiff would be reinstated, and allowed to resign within thirty days of the

agreement. If she did not resign, she would be discharged. From July 31, 2000, until her resignation or discharge, plaintiff would be considered on unpaid leave. Further, the parties consented to the entry by this court of an attached proposed order, but the agreement provided that it would be valid regardless of this court's approval. The agreement also provided: "Washington agrees and understands that the Retirement Systems of Alabama is a separately governed entity from the City of Scottsboro."

The agreement was sent to defendants to sign, and was not returned until May 22, 2001. Meanwhile, on May 21, 2001, plaintiff hand-delivered a letter to this court, requesting that the agreement be set aside. (Doc. no. 37.) In the letter, plaintiff states that she is "in total disagreement with the negotiations made by both parties." *Id.* She claims:

> Mr. Stewart used misleading words and tactics in coercing my signature on the settlement. He led me to believe that whether or not I signed the case documents sent before you, the court would issue that they be signed by your secretary, and that judgment would stand in favor of the agreements and its terms.

*Id.* Plaintiff requested a hearing, which occurred on June 21, 2001. She asks this court to set aside the settlement agreement, and allow her case to proceed to trial.

## II. DISCUSSION

6

"The construction and enforcement of settlement agreements are governed by principles of the state's general contracts law." *Wong v. Bailey*, 752 F.2d 619, 621 (11th Cir. 1985); *see also Resnick v. Uccello Immobilien GMBH*, 227 F.3d 1347, 1350 (11th Cir. 2000); *Hayes v. National Service Industries*, 196 F.3d 1252, 1254 *11th Cir. 1999). This is true even when the agreement arises from alleged violations of a federal statute. *See Resnick*, 227 F.3d at 1350.

Generally, under Alabama law, an attorney cannot settle a client's case without consulting the client. *See Beverly v. Chandler*, 564 So. 2d 922, 924 (Ala. 1990). Even so, "a client can give express authority to his or her attorney to act, by signing an employment contract that gives this authority." *Id.* Thus, when an attorney acts pursuant to a written contract authorizing him to settle or resolve the case, a client may not repudiate the settlement agreement made by her attorney on her behalf. *Id.* at 923.

A contract authorizing an attorney to settle a plaintiff's claim is not void as an illegal contract against public policy. *Id.* at 924. Further, such contracts are expressly condoned by an Alabama statutory provision.

7

> An attorney has authority to bind his client, in any action or proceeding, by any agreement in relation to such case, made in writing, or by an entry to be make on the minutes of the court.

Alabama Code § 34-3-21 (1975). The statute provides that a plaintiff is bound even without such a contractual provision.

> This Court has stated that agreements made in settlement of litigation are as binding on the parties as any other contracts are:
>
>> "Section 34-3-21, Code of Alabama 1975, as amended, vests in an attorney authority to bind his or her client in all matters that relate to the cause, including the right to settle all questions involved in the case. Such agreements are not only authorized, but encouraged, to promote justice and fair dealing and to terminate properly or prevent litigation."

*Beverly*, 564 So. 2d at 923 (quoting *King v. Travelers Ins. Co.*, 513 So. 2d 1023, 1026 (Ala. 1987).

Here, the terms of plaintiff's legal representation are clear. The Stewart Law group may settle this action without plaintiff's consent. Plaintiff does not claim that she involuntarily signed the retainer agreement by which she obtained the legal representation of the Stewart Law Group.

Even so, this court finds the settlement agreement should not be enforced. The retirement benefits upon which the settlement is based are defined, interpreted, managed, and under the control of

8

a non-party to this action, the Retirement Systems of Alabama. As such, defendants are unable to bind Retirement Systems of Alabama. Indeed, the settlement agreement provides: "Washington agrees and understands that the Retirement Systems of Alabama is a separately governed entity from the City of Scottsboro. The City of Scottsboro, Louis E. Price and Ricky Earl Nance make no representations on behalf of the Retirement Systems of Alabama."[6] The only provisions in the agreement purporting to afford relief to plaintiff require defendants to reinstate plaintiff for thirty days. During such reinstatment, plaintiff will be considered on <u>unpaid</u> leave. Following that brief period of reinstatement, plaintiff either must resign or be discharged. Thus, plaintiff receives no benefit from the agreement entered into by her attorney. Indeed, the only benefits flow entirely to defendants and plaintiff's attorneys. This court accordingly finds the settlement agreement to be unjust, and refuses to enforce it.

### III. CONCLUSION

For the forgoing reasons, plaintiff's motion to set aside is due to be granted, and defendants' motion to enforce is due to be denied. An order consistent with this memorandum opinion shall be issued contemporaneously herewith.

---

[6] Defendant's exhibit 1.

DONE this the 9th day of July, 2001.

_____
United States District Judge